**BURSOR & FISHER, P.A.**
L. Timothy Fisher (State Bar No. 191626)
Elvia M. Lopez ((State Bar No. 331986)
Sean L. Litteral (State Bar No. 331985)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596
Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        elopez@bursor.com
        slitteral@bursor.com

*Attorneys for Plaintiff*

# UNITED STATES DISTRICT COURT

## EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ASHLEY FOUNTAIN, individually and on behalf of all others similarly situated,<br><br>                         Plaintiff,<br><br>        v.<br><br>THE PROCTER & GAMBLE COMPANY and THIS IS L. INC.,<br><br>                         Defendants. | Case No.<br><br>**CLASS ACTION COMPLAINT**<br><br><u>JURY TRIAL DEMANDED</u> |

Plaintiff Ashley Fountain ("Plaintiff") brings this action on behalf of herself, and all others similarly situated against The Procter & Gamble Company and This is L. Inc. (referred to collectively as, "Defendants").  Plaintiff makes the following allegations pursuant to the investigation of her counsel and based upon information and belief, except as to the allegations specifically pertaining to herself, which are based on personal knowledge.

## NATURE OF THE ACTION

1.      Plaintiff brings this class action lawsuit on behalf of herself and similarly situated consumers ("Class Members") who purchased for personal, family, or household use, Defendants' tampons sold under the brand name "L. Organic" (referred to as the "Products"),[1] which are unfit for menstrual use because they contain titanium dioxide ("TiO2"), a known toxin sufficient to render Defendants' marketing of the Products as "organic" and "natural" false, misleading, and deceptive. Additionally, Defendants use various other synthetic, non-natural ingredients such as polyester, glycerin, and paraffin in the Products.  Significantly, unsafe and non-natural ingredients make up more than half of the contents of the Products.  Defendants nonetheless prominently use clean representations such as "organic" and "natural," placing such claims in bold font on the front of the Products' packaging.  The various synthetic and unsafe ingredients make Defendants' marketing false, misleading, and deceptive.

2.      Based on Defendants' misrepresentations and omissions, a reasonable consumer would expect that the Products are indeed natural, organic, and clean, contain no synthetic ingredients, and can be safely purchased and used as marketed and sold.  However, the Products are not natural, organic and clean, and they contain various synthetic ingredients and pose a material health risk to unsuspecting consumers.  Yet, neither before nor at the time of purchase do Defendants notify consumers like Plaintiff that the Products should be approached with caution, that they contain meaningful levels of titanium dioxide ("TiO2"), and contain various synthetic ingredients.  Instead, Defendants affirmatively distract and confuse consumers with statements to further assure reasonable

---

[1] Discovery may reveal that additional of Defendants' products are within the scope of this Complaint.  Accordingly, Plaintiff reserves the right to include additional cosmetic items identified through the course of discovery, including across brands.

consumers like Plaintiff that she is purchasing a clean, natural, and safe product.  Examples of such statements include "BPA-Free," "No Rayon," "No . . . Chlorine Bleaching," and "No . . . Synthetic Pesticides," and such statements are complemented by graphics of plants, the globe, and an equal sign in addition to pastel greens and blues.

3.     Accordingly, Plaintiff brings her claims against Defendants individually and on behalf of a class of all others similarly situated for (1) violation of California's Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq*.; (2) violation of the Consumers Legal Remedies Act, Cal. Civ. Code § 1750, et seq.; (3) breach of the Implied Warranty under Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1792, et seq.; and California Commercial Code § 2314; (4) violation of California's False Advertising Law, Cal. Bus. & Prof. Code § 17200, et seq.; (5) Fraud; (6) Constructive Fraud; (7) Fraudulent Inducement; (8) Fraudulent Omission or Concealment; (9) Fraudulent Misrepresentation; (10) Negligent Misrepresentation; (11) Quasi-Contract / Unjust Enrichment; (12) Breach of Express Warranty; (13) violation of the Magnuson-Moss Warranty Act, 15 U.S.C. §§ 2301, et seq.

## **PARTIES**

4.     Plaintiff Ashley Fountain is a natural person and citizen of California who resides in Vallejo, California.  In or around May 2022, Ms. Fountain purchased L. Organic tampons from a brick-and-mortar Target in Vallejo, California.  Prior to her purchase, Mr. Fountain reviewed the labeling, packaging, and marketing materials of the products and saw the false and misleading claims that, among other things, the Products are "organic," "BPA-Free," "No Rayon," "No . . . Chlorine Bleaching," and "No . . . Synthetic Pesticides."  Plaintiff also saw these statements complemented by graphics of plants, the globe, and an equal sign in addition to pastel greens and blues, which led her to believe that the Products were natural, organic, clean, and safe.

5.     Ms. Fountain understood these claims to be representations and warranties by Defendants that the Products did not contain harmful or synthetic ingredients and was otherwise safe and suitable as a menstrual product.  Ms. Fountain reasonably relied on these representations and warranties in deciding to purchase the Products, and these representations were part of the basis of the bargain in that she would not have purchased the Products or would not have purchased them on

1  the same terms, if the true facts about its contents had been known.  As a direct result of Defendants'

2  material misrepresentations and omissions, Ms. Fountain suffered, and continues to suffer, economic

3  injuries.

4        6.    Ms. Fountain remains interested in purchasing clean menstrual products from

5  Defendants that are safe for menstrual use.  However, Plaintiff is unable to determine if the Products

6  are actually clean menstrual products that are safe for menstrual use and contain no synthetic

7  ingredients.  Plaintiff understands that the composition of the Products may change over time.  But

8  as long as Defendants may market the Products as clean, natural, and safe for menstrual use when

9  the Products are not, then when presented with false or misleading information when shopping, she

10  will be unable to make informed decisions about whether to purchase Defendants' Products and will

11  be unable to evaluate the different prices between Defendants' Products and competitors' Products.

12  Plaintiff is further likely to be repeatedly misled by Defendants' conduct, unless and until Defendants

13  are compelled to ensure that Products marketed and labeled as clean, organic, natural, and safe for

14  menstrual use, are, in fact, not.

15        7.    Defendant The Procter & Gamble Company is a Delaware corporation with its

16  principal place of business located in Cincinnati, Ohio.  Defendant has done substantial business

17  throughout California and the United States at all times during the Class Period.  At all relevant

18  times, Defendant has advertised, marketed, manufactured, distributed, and/or sold menstrual

19  products, including the Products at issue, to consumers in and throughout California and the United

20  States.  At all relevant times, Defendant, formulated, directed, controlled, had the authority to control,

21  and/or participated in the acts and practices set forth in this Complaint.

22        8.    Defendant This is L. Inc. is a subsidiary of Defendant The Procter & Gamble

23  Company and is a Delaware corporation with its principal place of business located in Cincinnati,

24  Ohio.  Defendant describes itself as "At L. love starts with accessible period care, made with

25  ingredients inspired by nature."

26        9.    Plaintiff reserves the right to amend this Complaint and add different products and

27  additional defendants, including without limitation any officer, director, employee, supplier, or

28

distributor of Defendants who has knowingly and willfully aided, abetted, and/or conspired in the false and deceptive conduct alleged herein.

**JURISDICTION AND VENUE**

10.     This Court has subject matter jurisdiction pursuant to 28 U.S.C. § 1332(d)(2)(A), as amended by the Class Action Fairness Act of 2005 ("CAFA"), because this case is a class action where the aggregate claims of all members of the proposed class are in excess of $5,000,000.00, exclusive of interest and costs, there are over 100 members of the putative class, and Plaintiff, as well as most members of the proposed class, are citizens of different states than Defendants.  This Court has personal jurisdiction over Defendants because they are licensed to do business in California, have designated an agent for services of process in California, and otherwise conduct substantial business in California.

11.     This Court has personal jurisdiction over Defendants because Defendants conduct substantial business within California such that Defendants have significant, continuous, and pervasive contacts with the State of California.

12.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because Defendants do substantial business in this District and a substantial part of the events giving rise to Plaintiff's claims took place within this District and Plaintiff saw and heard Defendants' advertisements in this District.

**FACTUAL ALLEGATIONS**

A.      **Defendants' Menstrual Products**

13.     Defendants operate under the name "L. Organic."

14.     The name has no other qualifiers and sends a concrete message to reasonable consumers like Plaintiff that the Product is a safe and clean product with natural ingredients and free of harmful chemicals and synthetic ingredients.

15.     Indeed, Defendants emphasize that message at every turn, including in its marketing, advertising, and directly on the Products' labels.

16.     For example, Defendants write directly on their website that "L." in the name "L. Organic" represents the following: "L. Is For Loving Your Body," "L. Is For Loving Your Budget,"

"L. Is For Lending A Hand," "L. Is For Loving Every Body," and "L. Is For Loving Every Community."

17.    Defendants write directly on their website that "Our tampons are made with organic cotton free from chlorine bleaching, pesticides, fragrances, and dyes with a BPA-free plastic applicator."

18.    Defendants write directly on their website that "our pads and liners are made with a cotton top layer free from chlorine, pesticides and fragrances."

19.    Defendants write directly on their website that "That's what we call period care inspired by nature designed with every body and every budget in mind."

20.    Defendants write directly on the websites of third-party retailers like Target, Kroger, and CVS that "L. is dedicated to the rebellious notion that women everywhere deserve better."

21.     In fact, L. Organic was founded by Talia Frenkel in 2011, a former photojournalist who worked with the United Nations and the Red Cross to document humanitarian crises around the world.

22.    And Defendant Procter & Gamble recognized the importance of this messaging to the consumer segments when it acquired L. Organic, stating that "From our deep consumer research and understanding, we know that different consumers are seeking different product benefits. Some we are currently meeting today with our Always and Tampax portfolio and others are looking for products like L. This acquisition is exciting because it will help us to reach new consumers."

23.    Defendant Procter & Gamble also remarked that "we can share . . . that we are focused on fueling the continued growth of L., and are committed to continue delivering the high quality, natural products that have earned the faith and trust of the L. consumer."

24.    And Defendants have continued that marketing ethos directly on the labels of the Products, with the unequivocal statement placed in bold font directly on the very front center of the packaging: "Organic Cotton Tampons," as set out in the image below:

///

///

///

1

2

3

4

5

6

7

8

ORGANIC
COTTON
TAMPONS

9    25.    Defendants also place the statement "with BPA-Free Plastic Applicators[,] No Rayon,

10  No Chlorine Bleaching Or Synthetic Pesticides," underneath that text, as set out in the image below:

11

12

13

with BPA-FREE PLASTIC APPLICATORS
NO RAYON, CHLORINE BLEACHING
OR SYNTHETIC PESTICIDES

14

15    26.    Defendants then complement these statements with images of a plant, globe, and

16  equal sign, further assuring reasonable consumers that the Products are safe and clean with natural

17  ingredients, having a positive impact on the globe and people.

18

19



20

21    27.    These messages continue on the reverse of the Products.  At the very top of the back

22  packaging, Defendants write that "L. Is For Love," as set out below:

23

24



25  //

26  //

27  //

28

28.     Defendants then include additional representations and icons directly at the top of the packaging, as set out below:



29.     These additional icons inform consumers that the Products they are purchasing are manufactured by a "Certified B Corporation" and that the Products are "Organic Certified," further assuring consumers that the Products are safe, clean, and made with natural ingredients, free of harmful substances and synthetic ingredients.

30.     These icons are then complemented by a paragraph of text consistent with the rest of Defendants' on-label marketing:



We believe access to period care is a fundamental right for every body. For every L. purchase, one period care item is made accessible to a person around the world who needs it. By supporting local organizations who make and donate pads, increase health education, create access to opportunity, and work to reduce menstruation taboos, we strengthen our collective action for lasting change. Love begins with L.

31.     Defendants' messaging uses words like "period care," "accessible," "supporting," "health education," "collective action," "lasting change," and, again, "Love begins with L." Together, these words serve to assure reasonable that they are purchasing a product from a company that is making safe and natural products free of harmful and synthetic ingredients.

32.     That paragraph of text is then complemented by images of women holding hands as well as one another's shoulders, giving reasonable consumers the impression that they are purchasing a product from a company that cares about their well-being.

33.     Then, as if to close the marketing production, Defendants place a large, prominent black banner under the image of the women set out above, with the following message:



34.     This message further assures reasonable consumers like Plaintiff that her purchase is an investment in a good company that cares about her well-being and which makes products reflective of that value.

35.     Only after all of that, Defendants set out in much fainter, horizontal font that is hard to read due to the colors in the background and the vertical font from the individual packaging of the tampons, the ingredient list.  What's more, the ingredient list provides descriptions of the ingredients, as if to assure reasonable consumers—if they even happen to notice the list—that there is no harm from the various ingredients.



36.     For example, Defendants state in italic font that the polyester is a "fiber that wicks away moisture" and the glycerin is a "coating for smooth feeling."

37.     Defendants even state that titanium dioxide is "naturally occurring," as if the ingredient is healthy and otherwise safe for menstrual use.

38.     Those statements only serve to confuse and mislead consumers.   Noticeably, Defendants make no effort to reconcile the existence of these synthetic, non-organic ingredients with the prominent "Organic" representations made directly on the front of the Products' packaging.

39.     In total, the packaging of the Products, set out below, are false, misleading, and deceptive to reasonable consumers who believe they are purchasing an organic, natural product compatible with menstrual health.

1
2
3
4
5
6
7
8
9
10



11    40.    Before Plaintiff Fountain purchased the Product, she picked up the Product, held it in

12 her hand, and reviewed the labeling materials discussed above.  Plaintiff believed based on the

13 brand's name and the other Product claims that the Product was a safe and clean product with natural

14 ingredients and free of harmful chemicals and synthetic, non-organic ingredients.

15    41.    However, Plaintiff and other reasonable consumers were misled.

16    **B.    The Vagina and Vaginal Health**

17    42.    According to expert Alexandra Scranton, "vaginal or vulva tissue [is] much different

18 and more sensitive than the skin on the rest of [the] body."[2]

19    43.    "The walls of the vagina are filed with numerous blood vessels and lymphatic vessels

20 which allow for direct transfer of chemicals into the circulatory system."

21    44.    "Chemicals absorbed through the vagina are easily and effectively distributed

22 throughout the body, without being metabolized."

23    45.    Indeed, according to Jessica Singh of Columbia University's Mailman School of

24 Public Health, "[t]he vagina is an effective delivery route of drugs to the systemic circulation,

25
26
27
28

---

[2] Alexandra Scranton, *Chem Fatal: Potential Health Effects of Toxic Chemicals in Feminine Care Products* 9 (2013).

1  suggesting that it could also effectively deliver other compounds like toxic chemicals, to the

2  circulation."[3]

3     46.    "This is due to the abundance of arteries, blood and lymphatic vessels in the walls of

4  the vagina mucosa, and the fact that absorption through this route bypasses first-pass metabolism, by

5  directly entering the peripheral circulation."

6     47.    "For instance, vaginal administration of estradiol results in significantly higher blood

7  serum levels compared to oral administration.  Furthermore, vulvar and virginal tissues are more

8  hydrated and permeable compared to the skin on the rest of the body, which may make these more

9  susceptible to chemical exposure."

10     48.    "Moreover, in addition to systemic exposure, vaginal exposure to chemicals and drugs

11  can also have local effects on vaginal and cervical tissue."

12     49.    "Therefore, if tampons do contain harmful chemicals, tampon use may be a

13  potentially important source of these chemicals via the virginal route given the rapid absorption that

14  occurs in the vagina and the cumulative exposure to tampons over a woman's reproductive life and

15  may also affect the epithelial integrity of virginal and cervical cells, potentially increasing

16  susceptibility to sexually transmitted infections."

17     **C.    Titanium Dioxide is Harmful to Human Health**

18     50.    Titanium dioxide or TiO2—which is used in paints, coatings, adhesives, plastics,

19  printing inks, and roofing materials—has demonstrated an ability to pass through biological

20  membranes, circulate through the body, and enter cells.  Research shows that the effects are serious,

21  including DNA and chromosomal damage, organ damage, inflammation, brain damage, genital

22  malformations, lesions in the liver and kidneys, and cell neurosis.

23     51.    TiO2 dioxide also builds up in the body's intestinal tract.  Ordinarily, the intestinal

24  track serves to absorb nutrients for the body.  However, titanium dioxide cannot be absorbed.  When

25  this occurs, the body's M-Cells absorb these particles and bring them to the innate immune system.

---

[3] Jessica Singh, et al., "Tampon Use, Environmental Chemicals and Oxidative Stress in the BioCycle Study," 18:11 *Env. Health* 1-9, 2 (2019).

Overtime, the titanium dioxide particles are incorporated by the innate immune system cells where they will remain without being degraded or dissolved.

52.     The European Parliament has banned TiO2 as an additive. Defendants, who operate offices and conduct substantial business in Europe, would have been aware of that ban and the problems presented by TiO2 when ingested or absorbed by the human body.

53.     Because the vagina represents an effective delivery route for toxic substances, the addition of TiO2 in L. Organic's tampons is especially concerning.

54.     This is particularly the case provided that there are plenty of affordable, non-toxic alternatives available that can serve the same purpose as TiO2.

**D.      Defendants' Misrepresentations and Omissions are Actionable**

55.     Defendants have endangered U.S. consumers, exposing them to TiO2, which Defendants know carries significant health concerns. Defendants has also misrepresented the Products as "organic" and "natural" despite the existence of non-natural and non-organic ingredients such as polyester, glycerin, and paraffin.

56.     As a result, Plaintiff and the Class were injured by the full purchase price of the Products because the Products are worthless, as they are marketed as natural, organic, and safe for menstrual use when they are not in fact natural, organic, and safe for menstrual use.

57.     Plaintiff and Class Members bargained for products that are natural, organic, and safe for menstrual use and were deprived of the basis of their bargain when Defendants sold them Products containing a significant percentage of ingredients that are not natural or organic and that are not safe for menstrual use.

58.     No reasonable consumer would expect that the Products marketed as safe, natural, organic, and safe for menstrual use would not be natural, organic, and safe for menstrual use. Accordingly, Plaintiff and Class Members suffered economic injuries as a result of purchasing the Products.

59.     As the Products expose consumers to a substance that pose a risk to consumers' health, the Products are not fit for menstrual use. Plaintiff and the Class are further entitled to

1    damages for the injury sustained in being exposed to TiO2, damages related to Defendants' conduct,

2    and injunctive relief.

3           60.    Moreover, because these facts relate to a critical safety-related deficiency in the

4    Products, Defendants were under a continuous duty to disclose to Plaintiff and Class Members the

5    true standard, quality, and grade of the Products and to disclose that the Products contained

6    substances known to have adverse health effects.    Nonetheless, Defendants concealed and

7    misrepresented this information, as discussed herein.

8           61.    Although Defendants are in the best position to know what content it placed on their

9    packaging during the relevant timeframe, and the knowledge that Defendants had regarding the

10   presence of TiO2, and its failure to tell consumers that the Products contained TiO2 and other

11   synthetic ingredients, to the extent necessary, Plaintiff satisfies the requirements of Rule 9(b) by

12   alleging the following facts with particularity:

13          62.    **WHO**:  Defendants made material misrepresentations and omissions of fact about the

14   Products through its labeling which shows that the Products are natural, organic, and safe for

15   menstrual use.   These representations constitute omitted material information regarding harmful

16   chemicals.

17          63.    **WHAT**:  Defendants' conduct here was, and continues to be, fraudulent because it

18   misrepresented and omitted that the Products contain a substance—TiO2—that is widely known to

19   have significant health repercussions, and otherwise that the Products are natural and organic.  Thus,

20   Defendants' conduct deceived Plaintiff and Class Members into believing that the Products are safe

21   for human use when they are not.  Defendants knew or should have known that this information is

22   material to reasonable consumers, including Plaintiff and Class Members in making their purchasing

23   decisions, yet they continued to pervasively market the Product in this manner in the U.S. market.

24          64.    **WHEN**:  Defendants made material misrepresentations and omissions during the

25   putative class periods, including prior to and at the time Plaintiff and Class Members purchased the

26   Products, despite their knowledge that the Products' packaging contained TiO2, a harmful substance

27   with known adverse health effects, and otherwise, that the Products were not natural or organic.

28

65.    **WHERE**:  Defendants' marketing message was uniform and pervasive, carried through material misrepresentations and omissions on the labeling of the Product's packaging, website, and through marketing materials.

66.    **HOW**:  Defendants made material misrepresentations and omissions of fact regarding the Products, including the presence of TiO2 in the Products, and otherwise that the Products were natural and organic.

67.    **WHY**:  Defendants made the material misrepresentations and omissions detailed herein for the express purpose of inducing Plaintiff, Class Members, and all reasonable consumers to purchase and/or pay for the Products, the effect of which was that Defendants profited by selling the Products to hundreds of thousands of consumers.

68.    **INJURY**:  Plaintiff and Class Members purchased, paid a premium (up to the full-price), or otherwise paid more for the Products when they otherwise would not have absent Defendants' omissions.

## TOLLING AND ESTOPPEL OF THE STATUTE OF LIMITATIONS

69.    Defendants have had actual knowledge for years that the Product contains harmful substances and, otherwise, that the Products are not natural or organic.

70.    Although Defendants were aware of the deception in their labeling given the inclusion of polyester, glycerin, paraffin, and titanium dioxide in the Products despite claims of the Products' composition and safety, they took no steps to warn Plaintiff or Class Members of risks related to TiO2 in the Products.

71.    Despite their knowledge, Defendants have fraudulently misrepresented and omitted the risks of the Products.  Defendants had a duty to disclose the true nature and quality of the Products and to disclose the health and safety risks associated with the Products.

72.    Defendants made, and continue to make, affirmative misrepresentations and omissions to consumers, to promote sales of the Products, including that the Products are safe and sustainable.

73.    Defendants concealed material facts that would have been important to Plaintiff and Class Members in deciding whether to purchase the Products.  Defendants' concealment was

knowing, and they intended to, and did, deceive reasonable consumers, including Plaintiff and Class Members.   Accordingly, Plaintiff and Class Members reasonably relied upon Defendants' concealment of these material facts and suffered injury as a proximate result of that justifiable reliance.

74.     The TiO2 included in the formulation, design and/or manufacture of the Products were not reasonably detectible to Plaintiff and Class Members for the reasons outlined above.

75.     At all times, Defendants actively and intentionally concealed the existence of the TiO2 and failed to inform Plaintiff or Class Members of the existence of TiO2, or that the Product contained synthetic, non-organic ingredients.   Accordingly, Plaintiff and Class Members' lack of awareness was not attributable to a lack of diligence on their part.

76.     Defendants' statements, words, and acts were made for the purpose of suppressing the truth that the Products contained harmful substances and synthetic substances.

77.     Defendants concealed or misrepresented the TiO2, as well as the non-natural nature of the Product, for the purpose of delaying Plaintiff and Class Members from filing a complaint on their causes of action.

78.     As a result of Defendants' active concealment of the TiO2 and/or failure to inform Plaintiff and Class Members of the TiO2 and the true non-natural nature of the Product, any and all applicable statute of limitations otherwise applicable to the allegations herein have been tolled. Furthermore, Defendants are estopped from relying on any statute of limitations in light of their active concealment of the harmful nature of the Products.

79.     Further, the causes of action alleged herein did not accrue until Plaintiff and Class Members discovered that the Product contained TiO2, which, at the very earliest, would have been July 2022.  Plaintiff and Class Members had no realistic ability to discern that the Products contained TiO2 and were hampered in their ability to discover their causes of action because of Defendants' active concealment and misrepresentations of the existence of TiO2 in the Products, as well as the Products' true nature.

## CLASS ALLEGATIONS

80. ***Class Definition.*** Plaintiff brings this action on behalf of a class of similarly situated individuals, defined as all persons in the United States who, within the applicable statute of limitations period, up to and including the date of final judgement in this action, purchased any of Defendants' Products at issue (the "Class")

(a) ***California Subclass.*** Plaintiff Ashley Fountain also seeks to represent a subclass of all Class members who within the applicable statutes of limitations period, up to and including the date of final judgement in this action, purchased any of the Products at issue in California (the "California Subclass").

81. Excluded from the Class and Subclasses are persons who made such purchase for purpose of resale, Defendants and any entities in which Defendants have a controlling interest, Defendants' agents and employees, the judge to whom this action is assigned, and members of the judge's staff, and the judge's immediate family.

82. Plaintiff reserves the right to amend the definition of the Class and Subclass if discovery or further investigation reveals that the Class or Subclass should be expanded or otherwise modified.

83. ***Numerosity.*** Members of the Class and Subclass are so numerous that their individual joinder herein is impracticable. On information and belief, members of the Class and Subclass number in the millions. The precise number of Class members and their identities are unknown to Plaintiff at this time but may be determined though discovery. Class members may be notified of the pendency of this action by mail and/or publications through the distribution records of Defendants and third-party retailers and vendors.

84. ***Commonality and Predominance.*** Common questions of law and fact exist as to all Class members and predominate over questions affecting only individual Class members. Common legal and factual questions include but are not limited to: whether Defendants warranted the Products as natural, organic, and safe for menstrual use; whether Defendants breached these warranties; and whether Defendants committed the statutory and common law violations alleged against them herein by doing so.

85.   *Typicality.*   The claims of the named Plaintiff is typical of the claims of the Class in that Plaintiff purchased one of Defendants' Products in reliance on the representations and warranties described above and suffered a loss as a result of that purchase.

86.   *Adequacy.*   Plaintiff is an adequate representative of the Class and respective Subclass because her interest does not conflict with the interests of the Class and Subclass members she seeks to represent, she has retained competent counsel experienced in prosecuting class actions, and they intend to prosecute this action vigorously.  The interests of the Class and Subclass members will be fairly and adequately protected by Plaintiff and her counsel.

87.   *Superiority.*   The class mechanism is superior to other available means for the fair and efficient adjudication of the claims of Class members.  Each individual Class members may lack the resources to undergo the burden and expense of individual prosecution of the complex and extensive litigation necessary to establish Defendants' liability.  Individualized litigation increases the delay and expense of all parties and multiplies the burden on the judicial system presented by the complex legal and factual issues of the case.  Individualized litigation also presents a potential for inconsistent or contradictory judgments.  In contrast, the class action device presents far fewer management difficulties and provides the benefits of single adjudication, economy of scale, and comprehensive supervision by a single court on the issue of Defendants' liability.  Class treatment of the liability issue will ensure that all claims and claimants are before this Court for consistent adjudication of liability issues.

88.   Defendants have acted or failed to act on grounds generally applicable to the Class, thereby making appropriate final injunctive relief with respect to the Class and Subclass as a whole.

89.   Without a class action, Defendants will continue a course of action that will result in further damages to Plaintiff and members of the Class and Subclass and will likely retain the benefits of its wrongdoing.

90.   Based on the foregoing allegations, Plaintiff's claims for relief include those set forth below.

//

//

1

2

<u>COUNT I</u>
**(Violation of California's Unfair Competition Law,
Cal. Bus. & Prof. Code §§ 17200, *et seq*.)**

3    91.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

4    92.    Plaintiff bring this claim individually and on behalf of the Class against Defendants

5    under California law.

6    93.    California Business and Professions Code § 17200 prohibits "any unlawful, unfair, or

7    fraudulent business act or practice."  For the reasons discussed above, Defendants have engaged in

8    unlawful, unfair, and fraudulent business acts or practices in violation of California Business &

9    Professions Code § 17200.

10    94.    By committing the acts and practices alleged herein, Defendants have violated

11    California's Unfair Competition Law ("UCL"), Cal. Bus. & Prof. Code §§ 17200-17210, as to the

12    Class, by engaging in unlawful, fraudulent, and unfair conduct.

13    95.    Defendants have violated the UCL's proscription against engaging in **<u>Unlawful</u>**

14    **<u>Business Practices</u>** as a result of its violations of the CLRA, Cal. Civ. Code § 1770(a)(5), (a)(7), and

15    (a)(9) as alleged below, violations of California's Song-Beverly Act, and violations of California's

16    False Advertising Law, in addition to breaches of warranty and violations of common law.

17    96.    As more fully described above, Defendants' misleading marketing, advertising,

18    packaging, and labeling of the Products is likely to deceive reasonable consumers.  In addition,

19    Defendants have committed unlawful business practices by, inter alia, making the misrepresentations

20    and omissions of material facts, as set forth more fully herein, and violating the common law.

21    97.    Plaintiff and the Class Members reserve the right to allege other violations of law

22    which constitute other unlawful business acts or practices.

23    98.    Defendants have also violated the UCL's proscription against engaging in **<u>Unfair</u>**

24    **<u>Business Practices</u>**.  Defendants' acts, omissions, misrepresentations, practices and non-disclosures

25    as alleged herein also constitute "unfair" business acts and practices within the meaning of Business

26    & Professions Code § 17200 *et seq*. in that its conduct is substantially injurious to consumers, offends

27

28

public policy, and is immoral, unethical, oppressive, and unscrupulous as the gravity of the conduct outweighs any alleged benefits attributable to such conduct.

99.     There were reasonably available alternatives to further Defendants' legitimate business interests, other than the conduct described herein.

100.    Defendants have further violated the UCL's proscription against engaging in **Fraudulent Business Practices**.  Defendants' claims, nondisclosures and misleading statements with respect to the Products, as more fully set forth above, were false, misleading and/or likely to deceive the consuming public within the meaning of Business & Professions Code § 17200.

101.    Plaintiff and the other Class Members suffered a substantial injury by virtue of buying the Products that they would not have purchased absent Defendants' unlawful, fraudulent, and unfair marketing, advertising, packaging, and omission about the defective nature of the Products.

102.    There is no benefit to consumers or competition from deceptively marketing and omitting material facts about the true nature of the Products.

103.    Plaintiff and the other Class Members had no way of reasonably knowing that the Products they purchased were not as marketed, advertised, packaged, or labeled.  Thus, they could not have reasonably avoided the injury each of them suffered.

104.    The gravity of the consequences of Defendants' conduct as described outweighs any justification, motive, or reason therefore, particularly considering the available legal alternatives which exist in the marketplace, and such conduct is immoral, unethical, unscrupulous, offends established public policy, or is substantially injurious to Plaintiff and the other Class Members.

105.    Pursuant to California Business and Professional Code § 17203, Plaintiff and the Class seek an order of this Court that includes, but is not limited to, an order requiring Defendants to (a) provide restitution to Plaintiff and the other Class Members; (b) disgorge all revenues obtained as a result of violations of the UCL; and (c) pay Plaintiff's and Class members' attorneys' fees and costs.

106.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law, if, for instance damages resulting from her purchase of the Product is determined to be an amount less than the premium price of the Product.  Without compensation for the full premium

price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

107.    Injunctive relief is also appropriate, and indeed necessary, to require Defendants to provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can reasonably rely on Defendants' representations as well of those of Defendants' competitors who may then have an incentive to follow Defendants' deceptive practices, further misleading consumers.

108.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) correcting the deceptive marketing described above, including but not limited to adequate disclosure of TiO2 in the Product and its effects; or (2) the removal of such substances from the Product, will ensure that Plaintiff is in the same place she would have been in had Defendants' wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of the Products absent misrepresentations and omissions with the full purchase price or price premium at her disposal.

### COUNT II
**(Violation of California's Consumers Legal Remedies Act ("CLRA"),
California Civil Code § 1750, *et seq.*)
(Injunctive Relief Only)**

109.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

110.    Plaintiff brings this claim individually and on behalf of the Class against Defendants under California law.

111.    Civil Code § 1770(a)(5) prohibits "[r]epresenting that goods or services have sponsorship, approval, characteristics, ingredients, uses, benefits, or quantities which they do not have or that a person has a sponsorship, approval, status, affiliation, or connection which he or she does not have."

112.    Civil § 1770(a)(7) prohibits "[r]epresenting that goods or services are of a particular standard, quality, or grade, or that goods are of a particular style or model, if they are of another."

113.    Civil § 1770(a)(9) prohibits "advertising goods or services with intent not to sell them as advertised."

114.    Defendants violated Civil Code § 1770(a)(5), (a)(7), and (a)(9) by holding out the Product as natural, organic, and safe for menstrual use, when in fact the Products are not natural, organic, and safe for menstrual use.

115.    Defendants have exclusive or superior knowledge of the Products' composition and the associated health concerns, which was not known to Plaintiff or Class Members.

116.    Plaintiff and Class Members have suffered harm as a result of these violations of the CLRA because she has incurred charges and/or paid monies for the Products that she otherwise would not have incurred or paid, and were unknowingly exposed to a significant and substantial health risk.

117.    On August 10, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent Defendants a CLRA notice letter, which complies in all respects with California Civil Code § 1782(a).  The letter was sent via certified mail, return receipt requested, advising Defendants that they were in violation of the CLRA and demanding that they cease and desist from such violations and make full restitution by refunding the monies received therefrom.  The letter stated that it was sent on behalf of all other similarly situated purchasers.  Given the gravity of Defendants' conduct, Plaintiff has chosen not to wait for Defendants' response.  Accordingly, Plaintiff seeks injunctive relief only pursuant to the CLRA, and intends to amend her complaint following the notice period, to include claims for monetary damages.

118.    Injunctive relief is appropriate, and indeed necessary, to require Defendants to provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can reasonably rely on Defendants' representations as well of those of Defendants' competitors who may then have an incentive to follow Defendants' deceptive practices, further misleading consumers.

## COUNT III
### (Breach of Implied Warranty Under the Song-Berverly Act, Cal. Civ. Code § 1790, *et seq*. and California Commercial Code § 2314)

119.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

120.    Plaintiff brings this claim individually and on behalf of the Class against Defendants under California law.

121.     Under the Song-Beverly Consumer Warranty Act, Cal. Civ. Code § 1790. *et seq.*, and California Commercial Code § 2314, every sale of consumer goods in the State of California is accompanied by both a manufacturer's and retailer seller's implied warranty that the goods are merchantable, as defined in that Act.  In addition, every sale of consumer goods in California is accompanied by both a manufacturer's and retail seller's implied warranty of fitness when the manufacturer or retailer has reason to know that the goods as represented have a particular purpose and that the buyer is relying on the manufacturer's or retailer's skill or judgment to furnish suitable goods consistent with that represented purpose.

122.     The Products at issue here are "consumer goods" within the meaning of Cal. Civ. Code § 1791(a).

123.     Plaintiff and the Class Members who purchased the Products are "retail buyers" within the meaning of Cal. Civ. Code § 1791, and a third-party beneficiary of the end-user warranties consistent with California law.

124.     Defendants are in the business of manufacturing, assembling, and/or producing the Products and/or selling the Products to retail buyers, and therefore are "manufacturer[s]" and "seller[s]" within the meaning of Cal. Civ. Code § 1791.

125.     Defendants impliedly warranted to retailer buyers that the Products were merchantable in that they would: (a) pass without objection in the trade or industry under the contract description, and (b) were fit for the ordinary purposes for which the Products are used.  For a consumer good to be "merchantable" under the Act, it must satisfy both of these elements. Defendants breached these implied warranties because the Products were not natural, organic, or safe for menstrual use.  Therefore, the Products would not pass without objection in the trade or industry and were not fit for the ordinary purpose for which they are used.

126.     Plaintiff and Class Members purchased the Products in reliance upon Defendants' skill and judgment in properly packaging and labeling the Products.

127.     The Products were not altered by Plaintiff or the Class Members.

128.    The Products were defective at the time of sale when they were in the exclusive control of Defendants.  The issues as described in this complaint were latent in the product and not reasonably discoverable at the time of sale.

129.    Defendants knew that the Products would be purchased and used without additional testing by Plaintiff and Class Members.

130.    As a direct and proximate cause of Defendants' breach of the implied warranty, Plaintiff and Class Members have been injured and harmed because they would not have purchased the Products if they knew the truth about the Products, namely, that they were not natural and organic, and were unfit for menstrual use and posed a significant safety risk.

131.    Plaintiff and the Class seek compensatory damages, attorneys' fees, costs, and any other just and proper relief available under law.

**COUNT IV**
**(Violation of California's False Advertising Law,**
**Cal. Bus. & Prof. Code § 17500, *et seq*.)**

132.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

133.    Plaintiff brings this claim individually and on behalf of Class against Defendants under California law.

134.    Defendants' acts and practices, as described herein, have deceived and/or are likely to continue to deceive Class Members and the public.  As described above, and throughout this Complaint, Defendants misrepresented the Products as natural, organic, and safe for menstrual use, when in fact, the Products are none of these things.

135.    By their actions, Defendants disseminated uniform advertising regarding the Products to and across California.  The advertising was, by its very nature, unfair, deceptive, untrue, and misleading within the meaning of Cal. Bus. & Prof. Code § 17500, *et seq*.  Such advertisements were intended to and likely did deceive the consuming public for the reasons detailed herein.

136.    The above-described false, misleading, and deceptive advertising Defendants disseminated continue to have a likelihood to deceive in that Defendants failed to disclose that the

Products contain synthetic, non-organic substances, as well as harmful ingredients that pose a significant risk to the health and well-being of Plaintiff and the Class Members.

137.    Defendants continue to misrepresent to consumers that the Products are natural, organic, and safe for menstrual use.  However, as described, that is not the case.

138.    In making and disseminating these statements, Defendants knew, or should have known, their advertisements were untrue and misleading in violation of California law.  Plaintiff and other Class Members based their purchasing decisions on Defendants' misrepresentation and omission of material facts.  The revenue attributable to the Products sold in those false and misleading advertisements likely amounts to tens of millions of dollars.  Plaintiff and Class Members were injured in fact and lost money and property as a result.

139.    The misrepresentations and non-disclosures by Defendants of the material facts described and detailed herein constitute false and misleading advertising and, therefore, constitute a violation of Cal. Bus. & Prof. Code § 17500, *et seq*.

140.    As a result of Defendants' wrongful conduct, Plaintiff and Class Members lost money in an amount to be proven at trial.  Plaintiff and Class Members are therefore entitled to restitution as appropriate for this cause of action.

141.    Plaintiff and Class Members seek all monetary and non-monetary relief allowed by law, including restitution of all profits stemming from Defendants' unfair, unlawful, and fraudulent business practices; declaratory relief; reasonable attorneys' fees and costs under California Code of Civil Procedure § 1021.5; injunctive relief; and other appropriate equitable relief.

142.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at law, if, for instance damages resulting from their purchase of the Products is determined to be an amount less than the premium price of the Products.  Without compensation for the premium price of the Products, Plaintiff would be left without the parity in purchasing power to which she is entitled.

143.    Injunctive relief is also appropriate, and indeed necessary, to require Defendants to provide full and accurate disclosures regarding the Products so that Plaintiff and Class members can reasonably rely on Defendants' representations as well of those of Defendants' competitors who may then have an incentive to follow Defendants' deceptive practices, further misleading consumers.

144.    Restitution and/or injunctive relief may also be more certain, prompt, and efficient than other legal remedies requested herein.  The return of the full premium price, and an injunction requiring either (1) adequate disclosure of the non-natural and non-organic ingredients as well as that the Products are not fit for menstrual use; or (2) the removal of such ingredients from the Products, will ensure that Plaintiff is in the same place she would have been in had Defendants' wrongful conduct not occurred, i.e., the position to make an informed decision about the purchase of the Products absent omissions and misrepresentations with the full purchase price at her disposal.

**COUNT V**
**(Fraud)**

145.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

146.    Plaintiff brings this claim individually and on behalf of the Class under California law.

147.    At the time Plaintiff and Class Members purchased the Products, Defendants did not disclose, but instead concealed and misrepresented, the Products as safe, natural, organic, and fit for menstrual use.

148.    Defendants also knew that their omissions and misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon Defendants' omissions and misrepresentations in making purchasing decisions.

149.    Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature of the Products.

150.    Plaintiff and Class Members would have been reasonable in relying on Defendants' misrepresentations and omissions in making their purchasing decisions.

151.    Plaintiff and Class Members had a right to rely upon Defendants' misrepresentations and omissions as Defendant maintained monopolistic control over knowledge of the true nature and quality of the Products.

152.    Plaintiff and Class Members sustained damages as a result of their reliance on Defendants' misrepresentations and omissions, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial, including punitive damages.

1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

## COUNT VI
**(Constructive Fraud)**

153.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

154.    Plaintiff brings this claim individually and on behalf of the Class under California law.

155.    At the time Plaintiff and Class Members purchased the Products, Defendants did not disclose, but instead concealed and misrepresented, the Products as discussed herein.

156.    Defendants affirmatively misrepresented the Products, giving the Products the appearance of a product that is indeed natural, organic, and safe for menstrual use.

157.    Defendants also knew that their omissions and misrepresentations regarding the Products were material, and that a reasonable consumer would rely upon their representations (and corresponding omissions) in making purchasing decisions.

158.    Defendants had an obligation not to omit or misrepresent the Products because in addition to the fact that the Products pertained to matters of safety: (a) it was in the sole possession of such information; (b) it made partial representations regarding the quality of the Products; (c) Plaintiff and the Class Members relied upon Defendants to make full disclosures based upon the relationship between Plaintiff and Class Members, who relied on Defendants' representations and omissions, and were reasonable in doing so, with the full knowledge of Defendants that it did and would have been reasonable in doing so.

159.    Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true quality of the Products.

160.    Plaintiff and Class Members would have been reasonable in relying on Defendants' misrepresentations (and corresponding omissions) in making their purchasing decisions.

161.    Plaintiff and Class Members had a right to rely upon Defendants' representations (and corresponding omissions) as, in addition to the fact that the issue pertained to safety, Defendants maintained monopolistic control over knowledge of the true quality of the Product, and what information was available regarding the Products.

162.   Defendants breached their duty to Plaintiff and Class Members to make full disclosures of the safety of their Products.

163.   Plaintiff and Class Members sustained damages as a result of their reliance on Defendants' omissions and misrepresentations, and Defendants' breach of their duty, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial.

## COUNT VII
### (Fraudulent Inducement)

164.   Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

165.   Plaintiff brings this claim individually and on behalf of the Class under California law.

166.   Defendants did not disclose, but instead concealed and misrepresented material information about the Products as discussed herein.

167.   Defendants knew, or should have known, that the Products were falsely and misleadingly portrayed and that knowledge of the safety-related issues, as well as the true nature of the Products discussed throughout, was withheld from the consumer public.

168.   Defendants also knew that its omissions and misrepresentations regarding the Products were material, and that a reasonable consumer would rely on Defendants' omissions in making purchasing decisions.

169.   Plaintiff and Class Members did not know—nor could they have known through reasonable diligence—about the true nature and quality of the Products.

170.   Plaintiff and Class Members would have been reasonable in relying on Defendants' omissions in making their purchasing decisions.

171.   Plaintiff and Class Members had a right to rely on Defendants' omissions as Defendants maintained monopolistic / superior control over the Products, and what information was available regarding the Products.

172.   Defendants intended to induce—and did, indeed, induce—Plaintiff and Class Members into purchasing the Products based upon its omissions.

173.    Plaintiff and Class Members sustained damages as a result of their reliance on Defendants' omission, thus causing Plaintiff and Class Members to sustain actual losses and damages in a sum to be determined at trial.

**COUNT VIII**
**(Fraudulent Concealment or Omission)**

174.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

175.    Plaintiff brings this claim individually and on behalf of the Class under California law.

176.    At all relevant times, Defendants were engaged in the business of designing, manufacturing, distributing, and selling the Products.

177.    Defendants, acting through their representatives or agents, delivered the Products to their distributors and various other distribution channels.

178.    Defendants willfully, falsely, and knowingly omitted various material facts regarding the quality and character of the Products as discussed throughout.

179.    Rather than inform consumers of the truth regarding the Products, Defendants misrepresented the quality of the Products as discussed herein at the time of purchase.

180.    Defendants made these material misrepresentations to boost or maintain sales of the Products, and to falsely assure purchasers of the Products that Defendants are reputable companies and that their Products are safe for use.  The false representations were material to consumers because the omissions played a significant role in the value of the Products purchased.

181.    Plaintiff and Class Members accepted the terms of use, which were silent on the true nature of the Products, as discussed throughout.  Plaintiff and Class Members had no way of knowing Defendants' omissions as to the Products and had no way of knowing that Defendants' omissions were misleading.

182.    Although Defendants had a duty to ensure the safety, completeness, and accuracy of the information regarding the Products, they did not fulfill these duties.

183.    Defendants omitted or concealed material facts partly to pad and protect their profits, as they saw that profits and sales of the Products were essential for its continued growth and to

1    maintain and grow its reputation as a premier designer and vendor of the Products.  Such benefits

2    came at the expense of Plaintiff and Class Members.

3           184.    Plaintiff and Class Members were unaware of these material omissions, and they

4    would not have acted as they did had they known the truth.  Plaintiff's and class members' actions

5    were justified given Defendants' omissions.  Defendants were in the exclusive / superior control of

6    material facts, and such facts were not widely known to the public.

7           185.    Due to Defendants' misrepresentations, Plaintiff and Class Members sustained injury

8    due to the purchase of the Products that did not live up to its advertised representations.  Plaintiff and

9    Class Members are entitled to recover full refunds for the Products they purchased due to

10   Defendants' omissions.

11          186.    Defendants' acts were done maliciously, oppressively, deliberately, and with intent

12   to defraud, and in reckless disregard of Plaintiff's, and Class Members' rights and well-being, and

13   in part to enrich themselves at the expense of consumers.  Defendants' acts were done to gain

14   commercial advantage over competitors, and to drive consumers away from consideration of

15   competing products. Defendants' conduct warrants an assessment of punitive damages in an amount

16   sufficient to deter such conduct in the future.

17                                    **COUNT IX**
                                 **(Fraudulent Misrepresentation)**

18          187.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

19          188.    Plaintiff brings this claim individually and on behalf of the Class under California

20   law.

21          189.    Defendants falsely represented to Plaintiff and the Class that the Products were

22   natural, organic, and safe for menstrual use.

23          190.    Defendants intentionally, knowingly, and recklessly made these misrepresentations

24   to induce Plaintiff and the Class to purchase the Products.

25          191.    Defendants knew or should have known that their representations about the Products

26   were false in that the Products are not natural, organic, or safe for menstrual use as discussed

27

28

throughout.  Defendants knowingly allowed their packaging, labels, advertisements, promotional materials, and websites to intentionally mislead consumers, such as Plaintiff and the Class.

192.    Plaintiff and the Class did in fact rely on these misrepresentations and purchased the Products to their detriment.  Given the deceptive manner in which Defendants advertised, marketed, represented, and otherwise promoted the Products, Plaintiff's and the Class's reliance on Defendants' misrepresentations was justifiable.

193.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have suffered actual damages in that they would not have purchased the Products at all had they known of the safety risks associated with the Products and that they does not conform to the Products' labels, packaging, advertising, and statements.

194.    Plaintiff and the Class seek actual damages, attorney's fees, costs, and other such relief the Court deems proper.

## COUNT X
### (Negligent Misrepresentation)

195.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

196.    Plaintiff brings this claim individually and on behalf of the Class under California law.

197.    Defendants had a duty to Plaintiff and the Class to exercise reasonable and ordinary care in the developing, testing, manufacture, marketing, detailing, distribution, and sale of the Products.

198.    Defendants breached their duty to Plaintiff and the Class by developing, testing, manufacturing, marketing, detailing, distributing, and selling the Products to Plaintiff and the Class that did not have the qualities, characteristics, and suitability for use as advertised by Defendants and by failing to promptly remove the Products from the marketplace or take other appropriate remedial action.

199.    Defendants knew or should have known that the qualities and characteristics of the Products were not as advertised, marketed, detailed, or otherwise represented or suitable for their intended use and were otherwise not as warranted and represented by Defendants.  Specifically,

1  Defendants knew or should have known that the Products were not natural, organic, or safe for
2  menstrual use.

3      200.    As a direct and proximate result of Defendants' conduct, Plaintiff and the Class have
4  suffered actual damages in that they would not have purchased the Products at all had they known
5  that the Products were not natural, organic, and safe for menstrual use and that the Products do not
6  conform to the Products' labeling, packaging, advertising, and statements.

7      201.    Plaintiff and the Class seek actual damages, attorney's fees, costs, and any other just
8  and proper relief available.

9                                      **COUNT XI**
10                          **(Quasi-Contract / Unjust Enrichment)**

11     202.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

12     203.    Plaintiff brings this claim individually and on behalf of the Class under California
13  law.

14     204.    To the extent required by law, this cause of action is alleged in the alternative to legal
15  claims, as permitted under Fed. R. Civ. P. 8.

16     205.    Plaintiff and Class Members conferred benefits on Defendants by purchasing the
17  Products.

18     206.    Defendants were unjustly enriched in retaining the revenues derived from Plaintiff's
19  and Class Members' purchases of the Products.  Retention of those moneys under these
20  circumstances is unjust and inequitable because Defendants misrepresented and failed to disclose
21  that the Products were unfit for their intended purpose as they were not natural, organic, or safe for
22  menstrual use.  These omissions and misrepresentations caused injuries to Plaintiff and Class
23  Members because they would not have purchased the Products if the true facts were known.

24     207.    Because Defendants' retention of the non-gratuitous benefits conferred on them by
25  Plaintiff and Class Members is unjust and inequitable, Defendants have been unjustly enriched in an
26  amount to be determined at trial.

27     208.    Here, equitable relief is appropriate because Plaintiff may lack an adequate remedy at
28  law, if, for instance damages resulting from his purchase of the Products is determined to be an

1  amount less than the premium price of the Products.  Without compensation for the full premium

2  price of the Products, Plaintiff would be left without the parity in purchasing power to which she is

3  entitled.

4       209.    Restitution may also be more certain, prompt, and efficient than other legal remedies

5  requested herein.  The return of the premium price will ensure that Plaintiff is in the same place she

6  would have been in had Defendants' wrongful conduct not occurred, i.e., the position to make an

7  informed decision about the purchase of the Products absent omissions and misrepresentations with

8  the full purchase price at his disposal.

9  **COUNT XII**
**(Breach of Express Warranty)**

10      210.    Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

11      211.    Plaintiff brings this claim individually and on behalf of the Class under California

12  law.

13      212.    Plaintiff and Class Members formed a contract with Defendants at the time Plaintiff

14  and Class Members purchased the Product.

15      213.    The terms of the contract include the promises and affirmations of fact made by

16  Defendants on the Products' packaging and through marketing and advertising, as described above.

17      214.    This labeling, marketing, and advertising constitute express warranties and became

18  part of the basis of the bargain and are part of the standardized contract between Plaintiff and Class

19  Members.

20      215.    As set forth above, Defendants purport through their advertising, labeling, marketing,

21  and packaging, to create an express warranty that the Product is natural, organic, and safe for

22  menstrual use.

23      216.    Plaintiff and Class Members performed all conditions precedent to Defendants'

24  liability under this contract when they purchased the Products.

25      217.    Defendants breached express warranties about the Products and their qualities

26  because despite Defendants' warranties that the Products are natural, organic, and safe for menstrual

1   use, the Product is objectively not in fact natural, organic, or safe for menstrual use.  Thus, the

2   Products did not confirm to Defendants' affirmations and promises described above.

3       218.   Plaintiff and each Class Member would not have purchased the Products had they

4   known the true nature of the Products.

5       219.   As a result of Defendants' breach of warranty, Plaintiff and each Class Member

6   suffered and continues to suffer financial damage and injury, and are entitled to all damages, in

7   addition to costs, interest and fees, including attorney's fees, as allowed by law.

8       220.   On August 10, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent

9   Defendants a notice apprising Defendants of their breach of express warranties.  That letter complied

10   in all respects with U.C.C. §§ 2-313, 2-314, and 2607.

11                        **<u>COUNT XIII</u>**
                **(Violation of the Magnuson-Moss Warranty Act,**
12                  **15 U.S.C. §§ 2301, *et seq.*)**

13       221.   Plaintiff realleges and reincorporates by reference all paragraphs alleged above.

14       222.   Plaintiff brings this claim individually and on behalf of the Class under California

15   law.

16       223.   The Products are consumer products as defined in 15 U.S.C. § 2301(1).

17       224.   Plaintiff and Class Members are consumers as defined in 15 U.S.C. § 2301(3).

18       225.   Defendants are suppliers and warrantors as defined in 15 U.S.C § 2301(4) and (5).

19       226.   In connection with the marketing and sale of the Product, Defendants impliedly

20   warranted that the Products were fit for use and expressly warranted that the Products were safe.

21   However, as described throughout, that is not true.

22       227.   By reason of Defendants' breach of warranties, Defendants violated the statutory

23   rights due to Plaintiff and the Class pursuant to the Magnuson-Moss Warranty Act, 15 U.S.C §§

24   2301, *et seq.*, thereby damaging Plaintiff and the Class.

25       228.   On August 10, 2022, prior to the filing of this Complaint, Plaintiff's counsel sent

26   Defendants a pre-suit notice letter, apprising Defendants of their breach of warranties.  The letter

27   was sent via certified mail, return receipt requested.  The letter stated that it was sent on behalf of all

28   other similarly situated purchasers.

229.   Plaintiff and Class Members were injured as a direct and proximate result of Defendants' breach because they would not have purchased the Products if they knew the truth about the Product.

### **REQUEST FOR RELIEF**

WHEREFORE, Plaintiff, individually and on behalf of all others similarly situated, seeks Judgment against Defendant, as follows:

(a)   For an order certifying the Class under Fed. R. Civ. P. 23 and naming Plaintiff as representative of the Class and Plaintiff's attorneys as Class Counsel;

(b)   For an order declaring that Defendants' conduct violates the statutes referenced herein;

(c)   For an order finding in favor of Plaintiff, the Class on all counts asserted herein;

(d)   For compensatory, statutory, and punitive damages in amounts to be determined by the Court and/or jury;

(e)   For prejudgment interest on all amounts awarded;

(f)   For an order of restitution and all other forms of equitable monetary relief;

(g)   For injunctive relief as pleaded or as the Court may deem proper;

(h)   For an order awarding Plaintiff and the Class their reasonable attorneys' fees and expenses and costs of suit.

### **JURY TRIAL DEMANDED**

Pursuant to Federal Rule of Civil Procedure 38(b), Plaintiff demands a trial by jury of any and all issues in this action so triable of right.


Dated:  September 2, 2022          **BURSOR & FISHER, P.A**.

By: ___/s/_ *L. Timothy Fisher*_____

L. Timothy Fisher (State Bar No. 191626)
Sean L. Litteral (State Bar No. 331985)
Elvia M. Lopez (State Bar No. 331986)
1990 North California Blvd., Suite 940
Walnut Creek, CA 94596

Telephone: (925) 300-4455
Facsimile:  (925) 407-2700
E-mail: ltfisher@bursor.com
        slitteral@bursor.com
        elopez@bursor.com

*Attorneys for Plaintiff*

**CLRA Venue Declaration Pursuant to California Civil Code Section 1780(d)**

I, L. Timothy Fisher, declare as follows:

1.      I am an attorney at law licensed to practice in the State of California and a member of the bar of this Court.  I am a Partner at Bursor & Fisher, P.A., counsel of record for Ashley Fountain.  Plaintiff Fountain resides in Vallejo, California.  I have personal knowledge of the facts set forth in this declaration and, if called as a witness, I could and would competently testify thereto under oath.

2.      The Complaint filed in this action is filed in the proper place for trial under Civil Code Section 1780(d) in that a substantial portion of the events alleged in the Complaint occurred in the Eastern District of California, as Plaintiff purchased the Product from a retail store located within this District.  Additionally, Defendants advertised, marketed, manufactured, distributed, and/or sold the Products at issue to Plaintiff from this District.

I declare under the penalty of perjury under the laws of the State of California and the United States that the foregoing is true and correct and that this declaration was executed at Walnut Creek, California this 2nd day of September, 2022.


　　　 */s/ L. Timothy Fisher*　　　
　　　　　L. Timothy Fisher